UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KALEB T. MORRIS, as Administrator of the Estate of Victor D. Morris,<br><br>   Plaintiff,<br><br>   v.<br><br>DAIMLER TRUCKS NORTH AMERICA, LLC,<br><br>   Defendant. | Case No. 20-cv-246-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by defendant Daimler Trucks North America, LLC ("DTNA") (Doc. 24). DTNA, a citizen of Delaware and Oregon, argues that it is not subject to the Court's jurisdiction. Plaintiff Kaleb T. Morris has responded to the motion (Doc. 27).

**I.   Background**

This case arose after the plaintiff's decedent, Victor D. Morris, was killed in a traffic accident between two Freightliner Class 8 heavy commercial trucks on March 15, 2018. The decedent, a citizen of Illinois at the time, was an employee of W.W. Transport, Inc. and was driving a 2015 Freightliner Conventional Columbia truck ("Columbia truck") owned by W.W. Transport northbound on U.S. Highway 67 in Randolph County, Arkansas. The accident occurred when a southbound car crossed the centerline and collided with the Columbia truck, disabling the Columbia truck's steering control mechanism. The decedent was not able to control the Columbia truck, crossed the centerline, and collided with a 2015 Freightliner Cascadia truck ("Cascadia truck") driven by Floyd Beavers. The Cascadia truck had been driving behind the car that crossed the centerline and initiated the accident.

The decedent survived the impact between the Columbia truck and the Cascadia truck, but as a consequence of the collision, aerated diesel fuel from one or both trucks ignited, engulfing the Columbia truck in flames. The decedent was trapped in the Columbia truck and died in the fire.

The plaintiff, the decedent's son, filed this lawsuit in March 2020 alleging that DTNA "designed, engineered, developed, manufactured, fabricated, assembled, equipped, labeled, advertised, promoted, marketed, supplied, distributed and/or sold" both trucks involved in the accident. Am. Compl. ¶ 5 (Doc. 23 at 2). He claims DTNA is liable under theories of strict liability and negligence. He specifically claims the Columbia truck was defective in design because (1) it did not have an emergency egress portal that would have allowed the decedent to escape the burning truck, (2) it did not have a front underrun protective device to protect its steering components from damage in a frontal collision, (3) its fuel tank was not properly placed or protected, and (4) it bore inadequate warnings of its dangerousness in the foregoing regards. He further claims the Cascadia truck suffered some of the same defects.

DTNA believes this Court does not have personal jurisdiction to adjudicate the plaintiff's claims against it and has, accordingly, moved to dismiss this case for lack of personal jurisdiction.

**II.    Analysis**

   A.    <u>Personal Jurisdiction</u>

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court must hold

an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713).

A federal court sitting in diversity, as this Court is, looks to the personal jurisdiction law of the state in which the court sits to determine if it has jurisdiction. *Hyatt*, 302 F.3d at 713 (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Thus, this Court applies Illinois law. Under Illinois law, a court has personal jurisdiction over a defendant if an Illinois statute grants personal jurisdiction and if the exercise of personal jurisdiction is permissible under the Illinois and United States constitutions. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). However, because the Illinois long-arm statute, 735 ILCS 5/2-209(c), permits personal jurisdiction to the same extent allowed under the Illinois and United States constitutions, and because there is little, if any operative difference between Illinois and federal constitutional due process limits on the exercise of personal jurisdiction, the inquiry boils down to whether the Court can exercise personal jurisdiction consistent with the federal constitution. *Id.*; *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, No. 19-2465, 2020 WL 3960287, at *2 (7th Cir. July 13, 2020); *Hyatt*, 302 F.3d at 715.

The Due Process Clauses of the Fifth and Fourteenth Amendments limit when a court may exercise personal jurisdiction over nonresident individuals and corporations. *See Pennoyer*

3

*v. Neff*, 95 U.S. 714, 733 ), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977); *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1784 (2017) (noting the Fifth Amendment due process limits on federal courts may be different from Fourteenth Amendment due process limits on state courts); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446 (7th Cir. 2020) (noting Fifth Amendment Due Process Clause applies to federal court authority).   Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"   *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).   The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction.   Specific, or case-linked, jurisdiction refers to jurisdiction over a defendant in a suit arising out of or in connection with the defendant's purposeful contacts with the forum.   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984). General, or all-purpose, jurisdiction, on the other hand, may exist even in suits that do not arise out of or relate to the defendant's contacts so long as the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919; *accord Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).   No

party in this case contends the Court has general jurisdiction over DTNA; the issue is whether specific jurisdiction exists.

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotations omitted). First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Goodyear*, 564 U.S. at 924; *see Walden*, 571 U.S. at 284 (noting the contacts must be ones "that the defendant *himself* creates with the forum state"; internal quotations omitted; emphasis in original). Connections between the plaintiff or a third party and the forum state are not enough. *Walden*, 571 U.S. at 284-85. Second, the lawsuit must arise out of or be related to the defendant's contact with the forum. *Goodyear*, 564 U.S. at 923-24; *Helicopteros Nacionales*, 466 U.S. at 414 n. 8; *J.S.T.*, 2020 WL 3960287, at *3.

Whether a products liability defendant has purposefully availed itself of privileges in a particular state by placing its products into the "stream of commerce"—that is, the path from manufacturers to distributors to customers—is a subject of debate. *J.S.T. Corp.,* 2020 WL 3960287, at *2 (noting "the viability of the stream of commerce theory has been uncertain; circuit courts have split on the issue and the Supreme Court has twice failed to resolve it conclusively").

The theory was first articulated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). There, the Supreme Court considered whether an Oklahoma court had personal jurisdiction over a New York car distributor and dealership that had sold a car to a New York resident who then took the car to Oklahoma and was involved in an accident there. *Id.* at 288.

The Court noted that the car distributor and dealership directed their business activities only to New York and/or New Jersey and Connecticut and had no connection to Oklahoma other than that they distributed or sold the car that happened to be involved in an accident there.  *Id.* at 288-89, 295.  In finding no personal jurisdiction, a majority of the Supreme Court held that a defendant's "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" subjects it to the personal jurisdiction of that state.  *Id.* at 298.  On the other hand, as was the situation in the case before it, the Court held the forum state's court does not have personal jurisdiction over a defendant that sells a product to a consumer who then unilaterally moves the product into the forum state without the defendant expecting it to be so moved.  *Id.*

In *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), the Supreme Court could not agree whether a California court had personal jurisdiction over a Japanese defendant simply because it placed its product into the stream of commerce knowing and expecting it would end up in the forum state.  Four justices agreed that it was enough that a defendant who placed its product into the stream of commerce *knew* the product, "in the regular and anticipated flow of products," would be marketed and regularly sold in the forum state.  *Id.* at 117 (Brennan, J., concurring).  Having derived benefits from having its product sold in the forum, the manufacturer could predict and should not be surprised that it could be sued there as well.  *Id.*  Four other justices required more than a defendant's awareness that its product would enter the forum state through the regular course of business to establish "purposeful availment."  *Id.* at 112 (O'Connor, J.).  They required "something more," that is, that the defendant purposefully direct its business activities to the forum state by, for example, "designing the product for the market in the forum State, advertising in the forum State,

6

establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*   The ninth justice would look to the volume of sales of the defendant's product made in the forum to determine whether the defendant "purposefully availed" itself of the forum's benefits. *Id.* at 122 (Stevens, J., concurring).   Despite their various views of the stream of commerce theory, all of the justices agreed in the judgment that personal jurisdiction did not exist.   *Id.* at 108.

More recently, the Supreme Court decided *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011).   In that case, a British manufacturer of scrap metal machines had agreed with an independent distributor to sell its machines in the United States, but it did nothing to target the New Jersey market.   *Id.* at 878, 886 (Kennedy, J., plurality).   The distributor ended up selling no more than four machines, and possibly only one, in the state of New Jersey.   *Id.*   Four justices rejected the approach requiring only the awareness and expectation that a product would be sold in a particular state, and instead approved of the approach requiring purposeful targeting of business activities to the forum in addition to foreseeability of sales in the forum.   *Id.* at 885-86.   Two more justices found the plaintiff had not satisfied the tests articulated in *Asahi* or *World-Wide Volkswagen* where there was only a single sale of the offending product in the forum by an independent distributor.   *Id.* at 889 (Breyer, J., concurring).   In his concurrence, the narrowest articulation of the basis for the judgment, Justice Breyer rejected the extremes: (1) the absolute rule of Justice Kennedy's plurality requiring business activities targeting the specific forum and (2) the notion that mere awareness that a single product *might* be sold through a national distribution network in a distant forum—however unlikely, irregular or inconvenient—as sufficient to support personal jurisdiction under a stream of commerce theory.

*Id.* at 890-91.  Instead, he suggested the due process analysis should continue to focus on fairness in light of the relationship between the defendant and the forum as well as business realities such as the characteristics of the manufacturer and other "contemporary commercial circumstances."  *Id.* at 892-93.  The final three justices thought it imminently fair to exercise personal jurisdiction over a foreign manufacturing defendant in a state where its product caused an injury and where the defendant indiscriminately aimed to distribute its products across the entire country.  *Id.* at 905 (Ginsberg, J., dissenting).

       The Seventh Circuit Court of Appeals has acknowledged the open question regarding the appropriate stringency of the stream of commerce theory, that is, whether it requires only awareness and expectation that a manufacturer's product will be marketed and regularly sold in a certain market, whether the manufacturer must also have purposefully directed business activities to that market, or some middle ground.  *J.S.T.*, 2020 WL 3960287, at *3; *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).  However, courts in the Seventh Circuit continue to apply the less stringent stream of commerce theory in products liability cases.  The Court of Appeals for the Seventh Circuit noted before *J. McIntyre* that a majority of the Supreme Court had never overruled the less stringent expectation test articulated in *World-Wide Volkswagen*.  *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992).  *J. McIntyre* did not change that conclusion.  *See J.S.T..*, 2020 WL 3960287, at *3.  As a result, a federal courts sitting in Illinois continue to follow *Dehmlow*, in which it found "personal jurisdiction in a products liability suit because a defendant sold fireworks to a middleman 'with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce.'"  *Id.* (quoting *Dehmlow*, 963 F.2d at 947).  Thus, if a products liability defendant in a court in Illinois is aware

and expects its product to be marketed and regularly sold in Illinois in the stream of commerce, it will be subject to personal jurisdiction in Illinois.   In *J.S.T.*, the Court of Appeals explained:

> In the context of products liability, downstream sales to consumers can support personal jurisdiction because they bear on "the relationship among the defendant, the forum, and the *litigation*."   *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (emphasis added) (citation omitted).   Specific jurisdiction requires not only that a defendant establish minimum contacts with the forum state, but also that the litigation arise out of those contacts.   *Lexington Ins. Co.*, [*v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019)].   In a products liability suit, the underlying litigation alleges the development of a product that harms consumers.   Thus, when a defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue.   The stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers, but the point of consumer sale remains relevant to the relationship between the defendant, the forum, and the consumer-injury litigation.

*J.S.T.*, 2020 WL 3960287, at *3.   Thus, if DTNA placed the Columbia truck into the stream of commerce with the awareness and expectation that it could reach Illinois consumers in the stream of commerce, and the litigation arose out of those downstream sales, the Court has specific personal jurisdiction over DTNA in this case.[1]   *Compare id.* (misappropriation of trade secrets does not arise out of downstream sale of product in stream of commerce, so court did not have personal jurisdiction over trade secrets claim).

---

[1] The Court is aware that it is hard to square the stream of commerce theory with the principles underlying the holding of *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).   In that case, the Supreme Court found that a California court did not have personal jurisdiction over a drug manufacturer that distributed its drug in California through an independent distributor knowing the drug would be sold there and that was then sued in California by non-Californians who did not obtain the drug there.   It further appears that the Supreme Court may be poised to clarify the viability of the stream of commerce theory of personal jurisdiction in *Ford Motor Company v. Bandemer*, No. 19-369, and *Ford Motor Company v. Montana Eighth Judicial District Court*, No. 19-368, both of which are scheduled for oral argument on October 7, 2020.   Nevertheless, in the meantime, courts within the Seventh Circuit must follow *World-Wide Volkswagen* and *Dehmlow*.   Should it become apparent that these cases are no longer good law, the Court would entertain a motion to revisit the personal jurisdiction issue.

There is one final due process inquiry. Even where there are sufficient minimum contacts, a defendant may still show that the exercise of jurisdiction would be unfair or unreasonable in light of such factors as "the burden on the defendant. . .[;] the forum State's interest in adjudicating the dispute . . . ; the plaintiff's interest in obtaining convenient and effective relief . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292; *accord Asahi Metal*, 480 U.S. at 113; *Burger King*, 471 U.S. at 477. "The primary concern in assessing personal jurisdiction is the burden on the defendant." *Bristol-Myers Squibb*, 137 S. Ct. at 1776.

B.  Application to DTNA

DTNA argues that the plaintiffs have failed to make a *prima facie* showing that the Court has specific jurisdiction over it. It argues that it has no relevant jurisdictional connections with the state of Illinois. Specifically, it notes that it is a Delaware limited liability company with its principal place of business in Oregon. It designed the Columbia and Cascadia trucks in Oregon and manufactured them in Mexico. An independent Freightliner dealership in Texas sold the Columbia truck to Ervin Equipment Inc., an Illinois company, who then sold it to W.W. Transport, an Iowa company and the decedent's employer. An independent Freightliner dealer in Arkansas sold the Cascadia truck to an Arkansas company. The accident in this case occurred in Arkansas. DTNA argues that the only relevant link between this litigation and Illinois is the decedent's citizenship, which is insufficient to support personal jurisdiction over DTNA. It maintains that all other links between DTNA and Illinois—for example, the sale of other DTNA-manufactured trucks, its ownership of facilities, and other litigation involving

DTNA—are not relevant because they are not connected to this litigation. DTNA further argues that it is unreasonable and unfair for this Court to exercise personal jurisdiction over it.

The plaintiff argues essentially that the stream of commerce theory of personal jurisdiction brings DTNA within the authority of this Court. Specifically, he notes that DTNA placed the Columbia and Cascadia trucks into the stream of commerce starting with its own authorized dealerships and ending up, at least for the Columbia truck, being used in Illinois. The plaintiff argues that DTNA's awareness of its Freightliner dealership network in Illinois and its substantial sales revenue and marketing efforts in Illinois demonstrate that it was aware and expected its trucks to end up being sold in Illinois and possibly injuring an Illinois citizen. The plaintiff further points to other Illinois-related facts: the Columbia truck was registered to DTNA when it entered Illinois; it was first registered as a new vehicle in Illinois by Ervin Equipment; it was first used in Illinois by W.W. Transport; the decedent's home W.W. Transport terminal was in Wood River, Illinois; the load the decedent was transporting on the day of the accident originated in Illinois; and the injuries the plaintiff suffered were in Illinois. He also points to numerous additional contacts DTNA has with Illinois: its registration to do business; its registered agent for service of process; its performance of service, warranty, and repair work; its substantial revenue earned from its work in Illinois; contracts with at least 20 dealers in Illinois that give them the right to promote its vehicles; its facility; lawsuits it has filed or defended in Illinois courts; and website steering Illinois customers to Illinois dealers. Finally, the plaintiff argues that DTNA has failed to show that the exercise of personal jurisdiction by this Court would be unreasonable in light of the fact that it has successfully cultivated a market for its products in Illinois so should expect to be sued here if its products are defective.

As the Seventh Circuit Court of Appeals recently recognized in *J.S.T.*, the *World-Wide Volkswagen* broad stream of commerce rule still applies within this circuit. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, No. 19-2465, 2020 WL 3960287, at *3 (7th Cir. July 13, 2020) (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992)). Thus, the Court will find a defendant has sufficient minimum contacts with a forum state if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," *World-Wide Volkswagen*, 444 U.S. at 298, and the litigation arises from the contacts between the defendant, the state, and the litigation, *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

It is clear that DTNA was aware that its trucks would be purchased by consumers in Illinois and put to use in Illinois when it placed them in the stream of commerce. It had agreements with at least 20 dealerships to sell its trucks in Illinois, and it participated in servicing and recalling those products in Illinois. Like in *Dehmlow*, DTNA sold its product to a middleman "with the knowledge that its [product] would reach Illinois consumers in the stream of commerce." In fact, it allowed itself to remain the registered owner while the Columbia truck travelled in the stream of commerce to Illinois. While it may try to argue that its Texas dealership unilaterally decided to move the Columbia truck to Illinois, like the customer in *World-Wide Volkswagen* unilaterally took its car to Oklahoma, that rings hollow when the Columbia truck remained registered to DNTA during the transit. Thus, if this litigation arose out of those contacts, the Court will have personal jurisdiction over DTNA.

Let's look at the contacts between DTNA, Illinois, and this litigation. The Court ignores all DTNA's other contacts with Illinois unrelated to this dispute or contacts that were created by a third party rather than by DTNA. The most salient contact is that the Columbia truck was

registered to DTNA when it entered Illinois and was then transferred to and resold by Ervin Equipment, an Illinois company, as a part of the regular stream of commerce anticipated by DTNA. The buyer was the decedent's employer, who put him to work driving the Columbia truck in Illinois. The causes of action in this lawsuit center on the design and manufacture of the Columbia truck and grow out of its passage in the stream of commerce through Illinois, ultimately to be used by the decedent in Illinois. Thus, the connections between DTNA, Illinois, and this litigation are sufficient to support personal jurisdiction over DTNA.

This case is distinguishable from *J.S.T.*, where the cause of action in the case involved misappropriation of trade secrets. *J.S.T.*, 2020 WL 3960287, at *3. There, the Court of Appeals concluded that, unlike products liability cases, which are "intrinsically linked to interactions with a consumer" in the stream of commerce, trade secret cases do not arise out of that stream. *Id.* Thus, it takes more than passing the *World-Wide Volkswagen* test to assert personal jurisdiction over a non-products liability case. This case *is* a products liability case "intrinsically linked to interactions with a consumer" and the product that flowed in the stream of commerce, so passing the *World-Wide Volkswagen* test is enough.[2]

**III.    Conclusion**

In sum, because the plaintiffs have made a *prima facie* showing of personal jurisdiction, the Court **DENIES** DTNA's motion to dismiss for lack of personal jurisdiction (Doc. 24). The Court further **GRANTS** DTNA's unopposed motion to extend the deadline for filing third-party

---

[2] As noted in footnote 1, should the Supreme Court overrule *World-Wide Volkswagen* in its decision in the *Ford Motor Company* cases the Supreme Court will hear this fall, the Court would entertain a motion to revisit the question of personal jurisdiction. Before the *Ford Motor Company* cases are decided, the Court will note a standing objection to preserve DTNA's objections in this regard.

actions (Doc. 35) until fourteen days after entry of this order.   The Court will address other pending motions by separate order.

**IT IS SO ORDERED.**
**DATED:   August 3, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
