UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KALEB T. MORRIS, as Administrator of the Estate
of Victor D. Morris,

           Plaintiff,

    v.

DAIMLER TRUCKS NORTH AMERICA, LLC,

           Defendant/Third-Party Plaintiff,

    v.

REBECCA N. ANDERSON,

           Third-Party Defendant.

Case No. 20-cv-246-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant/third-party plaintiff

Daimler Trucks North America, LLC ("DTNA") to compel discovery responses from third-party

defendant Rebecca N. Anderson (Doc. 70).   Anderson has responded to the motion (Doc. 73).

**I.**    **Background**

This case arose after the plaintiff's decedent, Victor D. Morris, was killed in a traffic

accident between two Freightliner Class 8 heavy commercial trucks on March 15, 2018.   The

decedent was driving a 2015 Freightliner Conventional Columbia truck ("Columbia truck")

northbound on U.S. Highway 67 in Randolph County, Arkansas.   The accident occurred when a

southbound Kia Sorrento driven by Anderson swerved into the northbound lane and collided

with the Columbia truck, disabling the Columbia truck's steering control mechanism.   The

decedent was not able to control the Columbia truck, crossed the centerline, and collided with a

2015 Freightliner Cascadia truck ("Cascadia truck") that had been traveling behind Anderson at

the time of the accident.   The decedent survived the impact between the Columbia truck and the Cascadia truck, but as a consequence of the collision, aerated diesel fuel from one or both trucks ignited, engulfing the Columbia truck in flames.   The decedent was trapped in the Columbia truck and died in the fire.

After the accident, Anderson and her stepfather Danny Huskey gave oral recorded statements to Southern Farm Bureau Casualty Insurance Company ("Southern Farm"), the insurer of the Sorrento.   Southern Farm claims adjuster Cory Jackson then prepared a four-page letter to his Southern Farm supervisor regarding his investigation of the claim, including summaries of Anderson's and Huskey's recorded.   Several months later, Anderson settled with the plaintiff for $25,000 in exchange for releasing Anderson, Huskey, and Huskey's wife from liability.

Years later in March 2020, the decedent's son filed this lawsuit alleging negligence and strict products liability claims against DTNA relating to the Columbia and Cascadia trucks.   In turn, DTNA brought a third-party contribution claim against Anderson, whose negligence it believes contributed to the decedent's death.   Specifically, DTNA asserts that Anderson was inattentive to her driving and was distracted by something inside her vehicle, which DTNA alleges included using her cell phone.   Anderson denies reading or sending texts or otherwise operating her cell phone at the time of the accident, although she admits she was distracted by something inside the car.   Anderson's mother admitted deleting a text message from Anderson's cell phone after the accident.   Additionally, Anderson converted her cell phone to a different type of device so that no data remains from the time of the accident.

DTNA seeks production of the 2018 recorded statements and Jackson's letter without redactions (Anderson has produced it with redactions).   Anderson refused, claiming the

2

recordings and redactions were protected by the attorney-client privilege.   DTNA now seeks an order compelling production of those materials.   It argues they are not privileged and are relevant to the circumstances of the accident, the possible destruction of evidence, and Anderson's defenses to the pending motion for summary judgment, including that her earlier settlement with the plaintiff was in good faith.

## II.    Analysis

As a preliminary matter, when the Court hears a case under diversity jurisdiction, it must apply state substantive law.   *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).   This includes state privilege law.   Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").   Where it is disputed, to decide which state's law applies,[1] the Court applies the choice of law rules of the state in which it sits—for this Court, Illinois.   *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing *Felder v. Casey,* 487 U.S. 131, 151 (1988)).

Under Illinois rules for the choice of privilege law, the Court generally follows the principles of § 139 of the Restatement (Second) of Conflict of Laws, which provides for application of the privilege law of the state with the "most significant relationship with the communication" in question.   *See Allianz Ins. Co. v. Guidant Corp.*, 869 N.E.2d 1042, 1056 (Ill. App. Ct. 2007); *Alton & S. Ry. Co. v. CSX Transp., Inc.*, No. 3:17-CV-01249-NJR, 2020 WL 4933652, at *5 (S.D. Ill. Aug. 24, 2020); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales*

---

[1] The ultimate choice of privilege law, however, is immaterial since, as explained below, both states' laws result in the same conclusion—the material sought is privileged.

3

*Practices & Prod. Liab. Litig.*, No. 3:09-MD-2100-DRH, 2011 WL 1375011, at *8 (S.D. Ill. Apr. 12, 2011).[2]   To determine which state has the most significant relationship with particular communications, the Court considers where the communication took place and where the communicating parties' prior relationship was centered.   Restatement (Second) of Conflict of Laws:   Privileged Communications § 139 cmt. e (Am. L. Inst. 1971).

In this case, it is clear that the state with the most significant relationship with the communications in issue—indeed the only state with a relationship to the statements—is Arkansas.   The recorded statements were made by Arkansas citizens in Arkansas to an insurance adjuster in Arkansas.   They further arose out of a preexisting insurer-insured relationship centered in Arkansas.   Similarly, Jackson's letter to his supervisor reflecting those communications was authored and communicated in Arkansas.   Those statements have no relation whatsoever to Illinois.

Arkansas's general rule of attorney-client privilege provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or *between the client and a representative of the client*, or (5) among lawyers and their representatives representing the same client.

Ark. R. Evid. 502(b) (emphasis added).   The rule further defines a "client" as someone "who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to

_____

[2] This choice it outweighed in certain circumstances when the other state's law arrives at a different result for the privilege question, but those exceptions to do not apply in this case. Restatement (Second) of Conflict of Laws:   Privileged Communications § 139 (Am. L. Inst. 1971).

obtaining professional legal services from him," Ark. R. Evid. 502(a)(1) and a "representative of the client" as "one having authority to obtain professional legal services . . . on behalf of the client," Ark. R. Evid. 502(a)(2).

Arkansas privilege law was addressed by a federal district court in *Schipp v. Gen. Motors Corp.*, 457 F. Supp. 2d 917 (E.D. Ark. 2006), which relied in great part on *Holt v. McCastlain,* 182 S.W.3d 112 (Ark. 2004).   In *Schipp*, as in this case, a defendant in an automobile accident case sought to discover a post-accident recorded statement the insured made to her insured, the insurer's summary of that statement, and the insurer's adjuster's investigation report, but the insured claimed that information was protected by the attorney-client privilege.   *Schipp*, 457 F. Supp. 2d at 919.   At that time, and to this day, the Arkansas Supreme Court has not ruled on this specific question.   *Id.* at 921.   The *Schipp* Court found the following factors relevant to the application of the Arkansas attorney-client privilege:

> 1) whether the insurance contract obligates the insurance company to defend claims. . . ; 2) whether the relationship between the insurer and the attorney exists at the time of the communication between the insurer and the insured. . . ; 3) whether the insurer is advised of the confidential information at the direction of an attorney. . . ; and 4) whether the communication is made for the dominant purpose of litigation. . . .

*Id.* at 920 (internal citations omitted).   The *Schipp* Court further noted that one of the main purposes of the attorney-client privilege is to promote full and frank discussions between attorneys and clients, and that uncertainty about whether an insured's statements to their insurer are discoverable undermines the cooperative relationship desired between an insured-client, the insurer and the attorney.   *Id.* at 921.

The *Schipp* Court looked to *Holt*, in which the Arkansas Supreme Court held that confidential statements to an attorney by an accident reconstruction expert retained by that attorney for the case were privileged under Rule 502(b)(1) because the expert was a

5

"representative of the lawyer" under Rule 502(a)(4).   *Id.* at 922 (citing *Holt* 182 S.W.3d at 117-18).   The *Schipp* Court further noted that an insurance company's investigator taking an insured's statement is often either considered to be assisting a lawyer in defending a claim or, under a typical policy, to be representing the insured in seeking legal services for the claim. *Schipp*, 457 F. Supp. 2d at 922.   The Court concluded that, even though the insured did not have counsel at the time, "[i]t should have been obvious when [the insured] gave her recorded statement that claims would be made against her and that she would call upon her insurer to defend those claims."   *Id.* at 922-23.   Consequently, the district court concluded that the Arkansas Supreme Court would find the insured's statements were statements from a client to her representative, or her future attorney's representative, for the purpose of obtaining legal representation under Rule 502(b)(1) and/or (4).

From the *Schipp* and *Holt* cases, this Court draws the conclusion that whether an insured's statements to an insurer are privileged under Arkansas law turns on whether the parties in communications were clients, representatives of clients, or representatives of lawyers under Arkansas Rule of Evidence 502.   If they are, privileges is conveyed under the terms of Rule 502(b).

Anderson and Huskey are both considered clients under Rule 502(a)(1) because at the time of their statements, it was obvious that they might call on Southern Farm to defend claims against them based on the accident, including retaining legal counsel pursuant to the insurance policy, as indeed it has in this case.   *See* Ark. R. Evid. 502(a)(1); *Schipp*, 457 F. Supp. 2d at 922-23.   In fact, they gave those statements under assurances that they were confidential, which is completely consistent with Southern Farm's acting as their agent for the purposes of retaining counsel.   That Anderson was not the "named insured" is immaterial since she qualified for

6

coverage under the policy as a permitted user of the Sorrento and thus would be entitled to a defense under the policy.   It is further clear that at that time, Southern Farm was acting as their representative because it was representing their interests and had the authority—and the obligation—to obtain professional legal services on their behalf.   *See* Ark. R. Evid. 502(a)(2). Under Rule 502(b)(4), communications between Anderson, Hulsey, and Southern Farm were communications "between the client and a representative of the client" who has authority to retain counsel for the client.   This construction is consistent with the purposes of the Arkansas attorney-client privilege to promote full and frank discussions between clients, attorney, and their respective representatives.   Thus, the Court finds the recorded statements are privileged under Arkansas law.

That does not end the inquiry, however, because § 139(2) of the Restatement (Second) of Conflict of Laws provides that, even if a statement is privileged under the law of the state with the most significant relationship, if it is not privileged under the forum state's law it should be admitted "unless there is some special reason why the forum policy favoring admission should not be given effect."   So the Court turns to the question of whether the statements were privileged under Illinois law, specifically, under the insured-insurer privilege recognized by Illinois courts as an offshoot of the attorney-client privilege.   *Chicago Tr. Co. v. Cook Cty. Hosp.*, 698 N.E.2d 641, 651 (Ill. App. Ct. 1998).

Under Illinois law, a statement given in confidence by an insured to an insurer is privileged where the insurer is under an obligation to defend the insured, even if it never actually retains a lawyer to represent the insured.   *People v. Ryan*, 197 N.E.2d 15, 17 (Ill. 1964).   Under those circumstances, "the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of

7

the interests of the insured."  *Id.*

In light of this rule, the recorded statements would be privileged under Illinois law as well as Arkansas law.   Anderson and Huskey gave their statements following a fiery accident initiated by Anderson's crossing the center line and colliding with another vehicle.   One death resulted from the accident.   It is reasonable to believe that lawsuits would follow and that Anderson and Huskey would need legal representation in that regard.   At the time of the recorded statements to Jackson, Southern Farm owed a duty to defend Anderson and Huskey under the insurance policy, so any reasonable person would understand they gave their statements to Jackson to assist an attorney in their defense should any lawsuits be filed.   That no lawsuit had been filed and no lawyer had been retained yet is irrelevant because the statements were given for the purpose of providing a defense to any claims that might arise from the accident, including the case at bar.   Thus, the statements are privileged under Illinois law as well as Arkansas law.   To the extent Jackson's written statements to his supervisor at Southern Farm reflect privileged statements made by Anderson and Huskey, they are likewise privileged under Arkansas and Illinois law.

## III.    Conclusion

For the foregoing reasons, the Court **DENIES** DTNA's motion to compel (Doc. 70).

**IT IS SO ORDERED.**
**DATED:   April 26, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

8